# NICHOLAS ATHAS *v.* ROBERT LEE HILL ET AL.

[No. 893, September Term, 1982.]

*Decided April 12, 1983.*

The cause was argued before ▮MORTON and GARRITY, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Howard J. Schulman,* with whom was *Peter G. Angelos* on the brief, for appellant.

*Austin W. Brizendine, Jr.,* with whom were *Moore, Hennegan, Carney & Ryan* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

The characters in this long running case are:

Summit Country Club, Inc., the employer;
Jack Pollack, President and Managing Agent of Summit;
Jerome Hurwitz, Vice-president of Summit;
Mitchell Rosenfeld, House Chairman of Summit;[1]
Nicholas Athas, an employee of Summit, the victim;
Robert Lee Hill, an employee of Summit, the assailant.

Athas suffered a disability resulting from an accidental personal injury arising out of and in the course of his employment. The injury was caused by the wilful act of Hill who assaulted Athas, cutting and stabbing him with a knife. *See* Md. Code (1957, 1979 Repl. Vol.) Art. 101, entitled "Workmen's Compensation," hereinafter referred to as "the Act," § 15 and § 67 (6). Athas proceeded against Summit for compensation under the Act.[2] He also proceeded at law in

1. Pollack died during the course of the litigation, and the personal representative of his estate was duly substituted for him. In this opinion "Pollack, et al." includes Hurwitz and Rosenfeld as well as Jack Pollack or, where appropriate, the personal representative of his estate.

2. In an answer to a request by Rosenfeld for an admission of facts, Athas admitted that as a result of his injuries he filed a claim with the Workmen's Compensation Commission of Maryland and that on 31 December 1974 the

the Circuit Court for Baltimore County against Hill for the assault, and against Pollack, et al. on the ground that they were negligent. He obtained a judgment against Hill in the amounts of $73,000 for compensatory damages and $5,000 for punitive damages. A demurrer by Pollack, et al. was sustained without leave to amend. Athas' appeal from the ruling is now before us.[3]

Athas presents one question:

> "Is a cause of action stated by an employee against a co-employee who undertakes and performs without due care the employer's duty to provide competent and non-violent co-employees?"

The duty on which Athas relied to support his action at law against Pollack, et al. arises by way of a common law qualification to the fellow-servant rule. Under that qualification it is the duty of an employer to use due diligence in the selection of competent and careful employees and in the retention in its service of none but those who are. The duty is recognized in Maryland. *Evans v. Morsell,* 284 Md. 160, 164-165, 395 A.2d 480 (1978); *Norfolk and Western Railroad Co. v. Hoover,* 79 Md. 253, 262, 29 A. 994 (1894); *Hamelin v. Malster,* 57 Md. 287, 306 (1881). *See Leonard v. Sav-A-Stop*

---

Commission passed an order determining that he sustained an accidental injury arising out of and in the course of employment, the injury resulting from the assault by Hill.

3. The case has been meandering through the trial and appellate courts of this State for almost a decade. The assault which started it all occurred the latter part of 1974. Athas instituted his action at law in August 1975. He appealed to this Court from the grant of a Motion Raising Preliminary Objection filed by Pollack, et al. We dismissed the appeal as premature under Md. Rule 605 and remanded the case for further proceedings. Athas v. Hill, et al., No. 478, September Term, 1976, filed 22 December 1976, unreported. Trial proceeded against Hill resulting in a judgment absolute on 19 September 1979 in favor of Athas. This judgment was not challenged. The judgment made the ruling on the Motion Raising Preliminary Objection ripe for appeal, and Athas again sought the review of it by this Court. We reversed the judgment granting the Motion and once more remanded the case for further proceedings. Athas v. Hill, et al., No. 1213 September Term, 1979, filed 4 June 1980, unreported. Pollack, et al. demurred to Athas' declaration. The demurrer was sustained with leave to amend. Athas filed an Amended Declaration. Pollack, et al. again demurred. This time, as stated above, the demurrer was sustained without leave to amend and Athas noted the appeal now before us.

*Services,* 289 Md. 204, 208, 424 A.2d 336 (1981); *Bauman v. Woodfield,* 244 Md. 207, 216, 223 A.2d 364 (1966); *McVey v. Gerrald,* 172 Md. 594, 602, 192 A. 789 (1937); *Security C. & L. Co. v. Bowers,* 124 Md. 11, 16, 91 A. 834 (1914); *Bartlett-Hayward Co. v. State,* 120 Md. 1, 5, 87 A. 499 (1913); *Penn. Steel Co. v. Nace,* 113 Md. 460, 482, 77 A. 1121 (1910). *Pollack, et al. concede, for the purpose of this appeal, that Summit owed the duty to Athas.*

The employer is primarily and absolutely obliged to perform the duty properly. *Wood v. Abell,* 268 Md. 214, 238, 300 A.2d 665 (1973); *Jarka Company v. Gancl,* 149 Md. 425, 431, 131 A. 754 (1926). The employer may authorize others, be they called manager, superintendent, middleman, foreman, or whatever, to hire and fire employees, but the duty is nondelegable in the sense that the employer cannot thereby relieve himself of or avoid the responsibility for a failure to discharge the duty to the injury of an employee. *Security C. & L. Co.,* 124 Md. at 16. In other words, the employer remains liable in respect to the duty for the omissions or neglect of the person to whom he entrusts the duty. *Hamelin,* 57 Md. at 306-308. *See Bartlett-Hayward Co.,* 120 Md. at 5-6; *Penn. Steel Co.,* 112 Md. at 484-485. *Pollack, et al. further concede, for the purpose of this appeal, that Summit delegated the duty to them as co-employees, that they actively assumed the discharge of the duty and that Athas was injured due to the failure of them individually to discharge it.*[4] But they urge that they are not

---

4. The concessions by Pollack, et al. are in accord with the rule that both a trial court hearing the matter of a demurrer to a declaration and an appellate court reviewing the judgment thereon of the court below "are required to assume, for the purpose of the ruling, the truth of all material and relevant facts that are well pleaded as well as all inferences which can be reasonably drawn from those well pleaded facts. Schwartz v. Merchants Mort. Co., 272 Md. 305, 307-308, 322 A.2d 544 (1974); Hall v. Barlow Corporation, 255 Md. 28, 42, 255 A.2d 873 (1969).

The Amended Declaration of Athas alleged that Athas and Hill were employees of Summit, that Pollack was its Managing Agent and President, and that Hurwitz and Rosenfeld were its Vice-president and House Chairman respectively. The Declaration further asserted that Pollack, et al., and each of them, assumed "the supervisory and immediate duties of personnel management and direction, discharging and otherwise directing the activities of the employees." It declared that Hill had a violent character

liable to Athas because the duty to provide competent, peaceful and law-abiding co-employees which they breached ran only from Summit to Athas and not from them to Athas. They argue that "[a]n employee does not have a duty to provide fellow employees with competent, peaceful and law-abiding co-workers." They claim that "[a]n employee is not liable to a co-employee for the former employee's failure to discharge his duty to their employer." They conclude that "[a]n employee injured by a co-employee's breach of his contract with the employer is not entitled to recover for any such breach." On the other hand, Athas declares that the duty is not only owed to him by Summit, but also by Pollack, et al., so that Pollack, et al. as well as Summit are liable to him for the negligent failure to perform it.

Both Athas and Pollack, et al. address the matter in the perspective of the common law. The common law relationship between employer and employee, however, was radically changed by workmen's compensation laws. We believe that, in the circumstances of this case, whether Athas' amended declaration alleges a cause of action can be determined only upon consideration of the provisions of Maryland's workmen's compensation statute.

The Act embodies a comprehensive scheme to withdraw all phases of extra-hazardous employments from private controversy and to provide sure and certain relief for injured workmen, their families and dependents regardless of questions of fault. *Continental Cas. Co. v. Mirabile,* 52 Md. App. 387, 395, 449 A.2d 1176, *cert. denied,* 294 Md. 652, (1982). It is designed *inter alia* to preclude tort actions against an employer.[5] Shining bright and clear from

---

and disposition which was known to Pollack, et al. by virtue of Hill's "violent background" and his previous altercations on the premises of Summit, all of which was unknown to Athas. It stated that Pollack, et al. had failed to warn Athas of Hill's violent character and disposition and otherwise took no steps to insure his safety. It set out that Athas, in the course of his employment, was assaulted and seriously injured by Hill. With respect to the demurrer, these facts are assumed to be true.

**5.** Basically workmen's compensation statutes do not rest upon any theory of tort liability, but upon one of social insurance. They apply the principle of strict liability, eliminating the "unholy trinity" of common law defenses — contributory negligence, assumption of risk, and the fellow

the intent of the General Assembly as gleaned from the Preamble to the Act, from the provisions of the Act, and from the cases of the Court of Appeals and this Court interpreting and applying those provisions is the proposition that upon claim and award or payment of compensation by an employer to an employee suffering an injury arising out of and in the course of his employment, no further liability shall inure to the employer. The Preamble to Acts 1914 announces that the relief to injured workmen set out in the Act shall be "to the exclusion of every other remedy, except as otherwise provided in this Act." Section 15 makes exclusive the liability of an employer to pay compensation. *See Kramer v. Globe Brewing Co.,* 175 Md. 461, 470, 2 A.2d 634 (1938). Section 36, in establishing a schedule for the payment of compensation, declares that "except in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." The provisos in the Act are clearly delineated, and none permit a law action against an employer if relief has been obtained by way of the payment of compensation. So under § 44 the privilege given an employee whose injury results from the deliberate intention of his employer to have a cause of action against the employer as if the Act had not been passed, is lost if the employee proceeds by way of compensation. Section 58 authorizes proceedings at law against third parties where the injury for which compensation is payable was caused under circumstances creating a legal liability in ". . . some person other than the employer."

The cases tracing the history of the Act and applying its provisions recognize as the policy of the State that the liability of the employer extends no further when compensation is awarded, and show that it existed from the enactment of the statute to the present time, unaffected by various amendments to the Act. In *Hagerstown v. Schreiner,* 135 Md. 650, 653, 109 A. 464 (1920) the Court said:

servant rule. For a concise statement of the reasons underlying the passage of workmen's compensation statutes see W. Prosser, *The Law of Torts,* § 80 (4th ed. 1971).

"As against an employer who has provided the insurance and who has not 'from deliberate intention produced such injury or death' the remedy by compensation under the act is exclusive."

*Hutzell v. Boyer,* 252 Md. 227, 232, 249 A.2d 449 (1969), states flatly that the Act "excludes an action in tort by an employee against his employer. . . ." Cases in the intervening years are to like effect. For example, *State v. Francis,* 151 Md. 147, 149, 133 A. 26 (1926) states that if the injured employee accepts "compensation under the act, such payment must be held as declared by section 36, article 101, to be 'in lieu of any and all rights of action whatsoever against any person whomsoever.'" It was said in *Kramer v. Globe Brewing Co., supra,* at 470: "Under the provisions of the Act . . . the right to sue the employer at common law is only inherent in the employee in cases in which the employer has failed to comply with it; in which latter case the employee . . . has the option of either claiming compensation under the Act, or maintaining an action at common law for damages on account of the injury." *Baltimore Transit Co. v. State,* 183 Md. 674, 677, 39 A.2d 858 (1944) put it this way: "There is no doubt that the Workmen's Compensation Act substituted for the common law liability of an employer for negligence, subject to the corresponding common law defenses, an absolute, but limited, liability regardless of fault, and made that liability exclusive, in the case of a conforming employer." *Transit Co. v. Harroll,* 217 Md. 169, 176, 141 A.2d 912 (1958), quoting *Barrett v. Indemnity Ins. Co.,* 152 Md. 253, 259, 136 A. 542 (1927), observed that when an injured employee "claimed and received compensation from the employer and the insurer, she could thereafter proceed only against the intervening *tort-feasor,* whose act caused the death of her husband *in compliance with the terms of the statute."* Expressed another way, an injured employee "is entitled to only one recovery. . . ." *Gray v. State Roads Comm'n,* 253 Md. 421, 425, 252 A.2d 810 (1969).

In the face of the dictates of the Act and the cases applying them, Athas, having proceeded against his employer, Summit, for compensation, acknowledges that he cannot proceed against Summit at law. He concedes that

> "[t]he Workmen's Compensation Law of Maryland is the exclusive remedy of an employee against an employer who negligently fails to create or provide a safe workplace, if the employer has complied with the mandates of that law."

Our inquiry now turns to whether Athas is entitled to proceed at law against Pollack, et al., who are his co-employees and his employer's officers and supervisors, despite that he is precluded from proceeding at law against his employer.

Athas could be entitled to proceed at law against Pollack, et al. only if so authorized by § 58 of the Act. The section "creates a special statutory remedy, and the rights of all persons affected by the proceedings are, so far as they are applicable, measured and limited by the terms of the statute."[6] *Barrett v. Indemnity Ins. Co., supra,* at 259. *See Transit Co. v. Harroll, supra,* at 176; *Johnson v. Miles,* 188 Md. 455, 460, 53 A.2d 30 (1947). He would be entitled to proceed by virtue of § 58 only if Pollack, et al. were third party tort-feasors in the contemplation of the section. We have seen that Summit, as Athas' employer, is expressly excluded from being a third party tort-feasor. As we see it, the issue, therefore, does not present a determination of the law of agency but rather a determination of the scope of immunity from liability granted by the Act. The issue is alembicated to whether Pollack, et al. share the immunity of Summit.

---

**6.** Although, as spelled out in § 15, the primary purpose of the Act is to provide relief to injured employees without regard to fault, § 58 recognizes that the injury may have been caused by the wilful or negligent act of a third party. It makes possible a more equitable result by way of subrogation in favor of an employer or his insurer paying compensation.

Section 58 establishes a three-pronged authorization for suit at law against a third party tort-feasor. Its provisions are neatly summarized in Baltimore Transit Co. v. Worth, 188 Md. 119, 141, 52 A.2d 249 (1947):

We are not referred to an appellate decision in this jurisdiction, nor are we aware of one, which would compel a certain resolution of the issue.[7] We have scanned the cases in other jurisdictions relating to the issue. *See* Annot., 21 A.L.R. 3d 845 (1968 & Supp. 1982). *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo. App. 1982) has collated and analyzed them, finding a pronounced split in authority, even considering that results may be based on the wording of

---

"[I]t is provided substantially that where an employee is injured and the injury is one for which Workmen's Compensation is payable and the injury was caused under circumstances creating legal liability in a person other than the employer, the employee may proceed either by law against the third person for damages or against the employer for compensation, or in case of joint tort feasors against both. [(1st prong)] The employer, if compensation is awarded, may enforce for his benefit the liability of the third person, provided if damages are recovered in excess of compensation awarded and certain expenses, then such excess shall be paid to the injured employee. [(2nd prong)] If the employer shall not within two months from the award by the Commission start proceedings to enforce the liability of the third person, the injured employee may himself enforce such liability with a provision that if damages are recovered, the injured employee may retain the expenses and costs of the action and the employer shall be reimbursed for the compensation awarded and specified expenses. The balance in excess of these items shall enure to the injured employee. [(3rd prong)] Finally, the amount thus received by the injured employee shall be in lieu of any award that might otherwise have been made thereafter in the same case under the provisions of the Workmen's Compensation Act."

Section 58 is set out in its entirety in Appendix A hereof.

**7.** In Athas' appeal from the Motion Raising Preliminary Objection, *see* note 3, *supra,* he asked if he was precluded from maintaining a common law action against officers of his corporate employer for their negligence in causing his injuries. In reversing the grant of the Motion by the lower court, we did not reach the question. Athas v. Hill, et al., No. 1213, September Term, 1979, filed 4 June 1980, unreported. We noted that § 15 of the Act "establishes workmen's compensation as the employee's exclusive remedy against his employer in situations such as this." We observed that Athas had relied on § 58 to state a cause of action, not against his employer, but against his employer's officers. We thought that in granting the Motion the trial court "as much as ruled that [Pollack, et al.] have to be considered [Athas'] employer since [Athas] was suing them for a breach of duty existing only between [Athas] and [Summit]." We observed: "That is to say, the trial court ruled *sub silentio* that [Athas] was precluded from maintaining a common law action against officers of his corporate employer for their negligence in causing his injuries." We held that the Motion was not the proper vehicle to inquire into the sufficiency of Athas' Declaration. We emphasized that "we venture no opinion whatever as to the sufficiency of [Athas'] Declaration in this case."

workmen's compensation statutes involved. There are various approaches to the issue. One is that the immunity granted the employer under the workmen's compensation law also applies to employees whose negligence caused the injury regardless of the nature of that negligence. *See Witherspoon v. Salm,* 251 Ind. 575, 243 N.E.2d 876 (1969); *Brown v. Estess,* 374 So.2d 241 (Miss. 1979); *Madison v. Pierce,* 156 Mont. 209, 478 P.2d 860 (1970); *Warner v. Leder,* 234 N.C. 727, 69 S.E.2d 6 (1952).[8] This approach is not applicable because it does not reflect the law of Maryland. The immunity granted the employer under our Act does not unqualifiedly extend to an employee whose negligence caused the injury. The Act "excludes an action in tort by an employee against his employer, but does not exclude tort actions between co-employees." *Hutzell v. Boyer, supra,* at 232. It permits an employee, "suffering a compensable injury because of the negligence of a fellow employee, to bring a personal injury action against that co-employee." *Hauch v. Connor, et al.* 295 Md. 120, 121, 453 A.2d 1207, 1208 (1983), affirming *Connor v. Hauch,* 50 Md. App. 217, 237 A.2d 661 (1981). *See Leonard v. Sav-A-Stop Services, supra,* 289 Md. at 208.

Another approach is typified by New Jersey cases. They are bottomed on the theory that in appropriate circumstances the contract duty of an employee to his employer is transmuted into tort duty to a fellow employee. *Miller v. Muscarelle,* 67 N.J.Super 305, 170 A.2d 437, *cert. denied,* 36 N.J. 140, 174 A.2d 925 (1961). *See* M. Feuer, *Personal Liabilities of Corporate Officers and Directors,* 216, 218 (1961); W. Prosser, *The Law of Torts* § 93 (4th ed. 1971).

---

8. In 1976 Louisiana's workmen's compensation law was amended to prohibit third party suits against an employer's executive officers and employees. La. Rev. Stat. § 23-1032 (West 1983 Supp.) Prior to the amendment the Louisiana courts had developed a four-stage analysis for imposing individual liability on co-employees including corporate executives and supervisory personnel. Canter v. Koehring Co., 283 So.2d 716, 720-721 (La. 1973).

The Workmen's Compensation Act of Pennsylvania was also amended to exempt a fellow employee from liability, except for intentional wrongs, when the disability or death is compensable under the Act. 77 Purdon's Pa. Stat. Ann. § 72 (Act August 24, 1963, P.L. 1175, No. 496, § 1.) See Martin v. Wood, 400 F.2d 310, 311, n. 1 (3rd Cir. 1968).

This approach presents difficulties. It is predicated upon the common law with reliance upon Restatement (Second) of Agency §§ 350-359 (1957). Section 491, comment a, however, states that the liabilities which flow from workmen's compensation acts are not within the scope of the Restatement of "this Subject." *Miller* does not place sufficient emphasis upon the workmen's compensation law itself, nor does it correctly assess "the importance of the distinction between those duties which arise solely because of the relationship of employment and those which exist independently of that relationship albeit occurring during the employment." *Gaertner,* 630 S.W.2d at 180. We are not persuaded to determine Pollack, et al.'s liability *vel non* by the application of this approach.

Under a third approach supervisory personnel are liable as co-employees in third party actions under certain workmen's compensation laws where they negligently perform the duty, delegated to them by their employer, to provide a safe place to work. Examples are found in *Ransome v. Hunter,* 362 P.2d 282 (Alaska, 1961) and *Fraley v. Worthington,* 385 F. Supp. 605 (Wy. 1974). This approach involves the concept of vice-principals, that is, one who exercises some recognized common-law nondelegable duty of the employer. *Schatz v. York Steak House Sys.,* 51 Md. App. 494, 496, 444 A.2d 1045 (1982).[9] In any event, we think that the issue before us is necessarily to be resolved under the provisions of our own Act.

A fourth approach deems that a corporate officer or supervisor performs in a dual capacity. He has immunity under the workmen's compensation law where his negligence is based upon a general nondelegable duty of the employer. To hold him liable something extra is required beyond a breach of duty of general supervision and safety,

---

**9.** Professor Larson opined that the vice-principal concept is outmoded. 2 A. Larson, *The Law of Workmen's Compensation,* § 72.14 (1982). But *see* Wood v. Abell, 268 Md. 214, 238-239, 300 A.2d 665 (1973); Jarka Company v. Gancl, 149 Md. 425, 431, 131 A. 754 (1926); Ches. Stevedoring Co. v. Hufnagel, 120 Md. 53, 87 A. 4 (1913); Frizzell v. Sullivan, 117 Md. 388, 391, 83 A. 651 (1912).

for that duty is owed by the employer, not the employee. This approach has been most frequently expounded by Wisconsin courts. *See Kruse v. Schieve,* 61 Wis. 2d 421, 213 N.W.2d 64 (1973); *Garchek v. Norton Co.,* 67 Wis. 2d 125, 226 N.W.2d 432 (1975); *Ortman v. Jensen & Johnson, Inc.,* 66 Wis. 2d 508, 225 N.W.2d 635 (1975); *Kruse v. Schieve,* 72 Wis. 2d 126, 240 N.W.2d 159 (1976); *Laffin v. Chemical Supply Co.,* 77 Wis. 2d 353, 253 N.W.2d 51 (1977). Other states have adopted a comparable approach. *Neal v. Oliver,* 246 Ark. 377, 438 S.W.2d 313 (1969); *Zurich Ins. Co. v. Scofi,* 366 So.2d 1193 (Fla. App. 1979); *Vaughn v. Jernigan,* 144 Ga. App. 745, 242 S.E.2d 482 (1978); *Collier v. Wagner Castings Co.,* 70 Ill. App. 3d 233, 26 Ill. Dec. 641, 388 N.E.2d 265 (1979); *Kerrigan v. Errett,* 256 N.W.2d 394 (Iowa 1977); *Dawley v. Thisius,* 304 Minn. 453, 231 N.W.2d 555 (1975); *Blumhardt v. Hartung,* 283 N.W.2d 229 (S.D. 1979); *Wilson v. Hasvold,* 86 S.D. 286, 194 N.W.2d 251 (1972); *Steele v. Eaton,* 130 Vt. 1, 285 A.2d 749 (1971). This approach is succinctly expressed in 2 A. Larson, *The Law of Workmen's Compensation,* § 72.13 (1982): "[M]ost courts will hold [corporate officers, directors and stockholders as co-employees] immune if the act with which he is charged is an act done in his official capacity as an agent or representative of the corporation. Suit is also barred if the duty allegedly violated was a nondelegable duty of the corporation, such as the duty to provide a safe place to work — as distinguished from the duty of care owed by one employee to another." Professor Larson includes supervisors and foremen as co-employees. He asserts: "Some states have held . . . that a supervisor, like a corporate officer, cannot be held liable by a co-employee for breach of a corporate duty, such as that to provide a safe place to work, but can be held only for breach of a personal duty." [10]

---

**10.** Professor Larson recognizes there is a split in authority on the matter. He adds: "Others have taken the position that a supervisor can be held personally liable for his own failure to fulfill the employer's duty of providing a safe place to work." 2 A. Larson, *The Law of Workmen's Compensation,* § 72.14 (1982).

The fourth approach is closely aligned with the "alter ego" concept. "If the defendant so dominates the corporation, perhaps as stockholder, president and manager, that he can honestly be said to be the alter ego of the corporation, this in itself may suffice to bar any action against him." *Larson* at § 72.13. *See Cunningham v. Heard,* 184 Ga. App. 276, 214 S.E.2d 190 (1975); *Chambers v. Gibson,* 145 Ga. App. 27, 243 S.E.2d 309 (1978).

We shall apply the concept expressed in the fourth or "Wisconsin" approach in determining whether Pollack, et al. are subject to or immune from a suit at law by Athas for their negligence in performing the duty of Summit, delegated to them. We believe that the approach developed by the Wisconsin courts is more in accord with the intent of our legislature in enacting the Workmen's Compensation Law, with the philosophy behind and the specifics of the provisions of that Act, and with the interpretation and application of those provisions by the appellate courts of this State. We are in full agreement with the reasons stated by the court in *Gaertner* for adopting the "Wisconsin" approach:

> "It was the purpose of the workmen's compensation law to place the burden of employment accidents upon the employer and ultimately upon the consuming public generally. To accomplish this purpose, the employee was entitled to recover for such accidents without the necessity of establishing negligence and was freed from defenses such as fellow servant, contributory negligence and assumption of risk. The employer on the other hand received immunity from general tort liability and damages and received an established basis for determining the extent of its monetary liability. The purpose of the Act was not to transfer the burden of industrial accidents from one employee to another. Clearly, plaintiff's suit here is an attempt to do that." 630 S.W.2d at 180.

And we are especially impressed with *Gaertner's* evaluation of the practical aspects:

"Further, we need not avoid consideration of the practical effects of upholding liability of defendants here. Under present day industrial operations, to impose upon executive officers or supervisory personnel personal liability for an accident arising from a condition at a place of employment which a jury may find to be unsafe would almost mandate that the employer provide indemnity to such employees. That would effectively destroy the immunity provisions of the workmen's compensation law." *Id.*

Like reasoning, even more elaborately expressed, is found in the comprehensive dissenting opinion of Summers, J. in *Canter v. Koehring,* 283 So.2d 716, 728-732 (La. 1973), in which a workmen's compensation act containing provisions comparable to § 58 in our Act is involved. We adopt the fourth approach.

We repeat in summary the facts before us. They are established for the purpose of this appeal by averments in the declaration, admissions in the pleadings and concessions by the parties. Athas, Hill and Pollack, et al. were co-employees of Summit. Summit authorized Pollack, et al. to perform the nondelegable duty owed by it to Athas as its employee, to provide a safe place to work by the employment of competent, peaceful and law-abiding co-employees. Pollack, et al. assumed the discharge of the duty, and, with respect to Hill, failed to carry it out properly. Athas, as a result of the negligence in the hiring of Hill or the retention of him as an employee, suffered an injury arising out of and in the course of his employment. Athas proceeded against Summit for compensation and it was awarded.

We apply these facts to the law encompassed by the approach which we endorse. Summit paid for the injury suffered by Athas at the hands of Hill by way of workmen's compensation. That exclusive remedy satisfied in full

Summit's liability to Athas. Whether or not Pollack, et al. were realistically the alter ego of Summit, they acted solely as the representative of their employer in their official capacity with respect to Summit's nondelegable duty, as distinguished from the general duty of care owed by one employee to another. Therefore, there were no circumstances "creating a legal liability in some person other than the employer to pay damages . . ." under § 58 of the Act. In relation to the injury suffered by Athas due to the conduct of Hill, Pollack, et al. stood in the shoes of Summit, and were not "some person other than the employer." In short, they share Summit's immunity from a suit at law.

We hold that the court below did not err in sustaining the demurrer of Pollack, et al. without leave to amend.[11]

*Judgment affirmed; costs to be paid by appellant.*

APPENDIX A

Md. Code (1957, 1979 Repl. Vol., 1982 Cum. Supp.) Art. 101, § 58, subtitle, "When third party liable," reads, in its entirety:

Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee, or in the case of death, his personal representative or dependents as hereinbefore defined, may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint tort-feasors against both; and if compensation is claimed and awarded or paid under this article, any employer, if he is self-insured, insurance company, association or the State

---

11. No question is presented on this appeal concerning the judgment obtained at law by Athas against Hill, and we venture no opinion regarding it.

Accident Fund, may enforce for their benefit, as the case may be, the liability of such other person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this article, and also any payments made for medical or surgical services, funeral expenses or for any of the other purposes enumerated in § 36 of this article, then any such excess shall be paid to the injured employee, or in case of death, to his dependents less the expenses and costs of action incurred by the employer, insurance company, association or State Accident Fund as the case may be. If any such employer, insurance company, association or State Accident Fund shall not, within two months from the passage of the award of this Commission, start proceedings to enforce the liability of such other person, the injured employee, or in case of death, his dependents, may enforce the liability of such other person, provided, however, that if damages are recovered the injured employee or in case of death his dependents may first retain therefrom the expenses and costs of action incurred by the said employee or in case of death his dependents, and the employer, insurance company, association or the State Accident Fund, as the case may be, shall be reimbursed for the compensation already paid or awarded and any amount or amounts paid for medical or surgical services, funeral expenses or for any of the other purposes enumerated in § 36 of this article, except court costs and counsel or attorney's fees, which shall be paid by the injured employee and/or his dependents, and the employer, insurance company, association or State Accident Fund in the proportion that the amount received by each shall bear to the whole amount paid· in settlement of any claim or satisfaction of any judgment obtained in the case, and the balance in excess of these items shall inure to the injured employee, or in case of death, to his dependents, and the amount thus received by the injured employee or in case of death by his dependents shall be in lieu of any award that might otherwise have been made thereafter in the same case under the provisions of this article and said case shall thereupon be deemed to have been finally settled and closed unless the amount thus received by

the injured employee or his dependents from such other person shall be less than the injured employee or his dependents would be otherwise entitled to receive under the provisions of this article, in which event he or his dependents shall have the right to reopen the claim for compensation under this article to recover the difference between the amount thus received by the injured employee or his dependents and the full amount of compensation which would be otherwise payable under this article.

When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation made to such employee under this article, and this section shall apply to past and future rights of action under this section.